1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Sharyn Nesbitt,                              No.  CV-19-5003-PHX-DMF

10                      Plaintiff,

11   v.                                           **ORDER**

12   G.D. Barri & Associates, Incorporated,

13                      Defendant.

14

15          This matter is before the Court on Defendant's Motion for Summary Judgment

16   (Doc. 30) and Defendant's accompanying Statement of Facts ("SOF") (Doc. 31) with

17   supporting materials (Doc. 31-1).  Plaintiff filed a Response in Opposition (Doc. 39), an

18   accompanying Controverting Statement of Facts ("CSOF") and exhibits (Docs. 36, 37, 38),

19   including a Declaration by Plaintiff (Doc. 36-1).  Defendant filed a reply (Doc. 40).  The

20   motion for summary judgment is ripe.  For the reasons set forth below, the motion for

21   summary judgment (Doc. 30) will be granted.

22   **I.     SUMMARY JUDGMENT STANDARD**

23          A party seeking summary judgment "bears the initial responsibility of informing the

24   district court of the basis for its motion, and identifying those portions of [the record] which

25   it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

26   *Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence,

27   viewed in the light most favorable to the nonmoving party, shows "that there is no genuine

28   issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c)(2).  The moving party must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" Fed. R. Civ. P. 56(c)(1)(A).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Id.*

Fed. R. Civ. P. 56 requires the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial,'" and such facts must be shown by the party's affidavits "or by the 'depositions, answers to interrogatories, and admissions on file.'" *Celotex*, 477 U.S. at 324.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 248.  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

## II.    ANALYSIS

Plaintiff's claims in this lawsuit are retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and a request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2207 (Doc. 1).  Plaintiff's claims arise from her allegations that her former employer,

G.D. Barri & Associates Incorporated ("G.D. Barri") terminated her employment as retaliation for Plaintiff having made a sexual harassment complaint (*Id.*).

Defendant has moved for summary judgment, arguing that Defendant has demonstrated a legitimate, non-discriminatory reason for the employment action and that Plaintiff lacks sufficient evidence to rebut the reason as pretextual (Doc. 30).  Plaintiff asserts that genuine issues of material fact preclude entry of summary judgment and argues that Defendant did not provide a legitimate, non-discriminatory reason for ending Plaintiff's employment (Doc. 39).  In its reply, Defendant argues that it did demonstrate a legitimate, non-discriminatory reason for the employment action:  that G.D. Barri was informed that APS no longer had work for Plaintiff (Doc. 40 at 3).  Further, Defendant argues that Plaintiff has not met her burden to establish pretext, but instead misrepresents the record, offers inadmissible statements to try to create issues of fact, and relies on a timing inference that is insufficient to meet Plaintiff's burden regarding pretext required to defeat summary judgment (Doc. 40).

## A.     Statement of Facts and Supporting Materials

There are several issues of note regarding Plaintiff's controverting statement of facts and supporting materials, summarized below.

### 1.     Plaintiff's LRCiv 56.1(b) Violations

LRCiv 56.1(b) states:

**(b) Controverting Statement of Facts.**  Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth:  (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party.  Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.  No reply statement of facts may be filed.

Given the requirements of the rule, where Plaintiff did not indicate that Defendant's asserted statement of fact is disputed and did not reference a specific admissible portion of the record in compliance with LRCiv 56.1(b), the Court will deem the Defendant's statement of fact undisputed provided there is support in the record for Defendant's statement of fact. *See, e.g.*, Statement of Fact ¶ 13. As illustration, paragraph 13 of Defendant's Statement of Facts asserts that "Ms. Nesbitt is eligible for re-hire" and Defendant supports the assertion with citation to particular, relevant portions of the exhibits to the Statement of Facts (Doc. 31 at 3 ¶ 13). The supporting deposition testimony for paragraph 13 of Defendant's Statement of Facts is exactly as represented (Doc. 31-1 at 9). Ignoring the dictate of LRCiv 56.1(b) in her Controverting Statement of Facts, Plaintiff fails to state whether Plaintiff disputes the asserted fact and instead wrote "This is not a material fact. Plaintiff does not feel comfortable going back to Defendant after the way she was treated. (Exhibit A, ¶ II.13)." (Doc. 36 at 5 ¶ 13).

Arguments about relevance and materiality are properly raised in the response, not in the statement of facts, and do not relieve a party of its obligations under LRCiv 56.1. In addition, the referenced portion of the record in Plaintiff's controverting statement of facts is a sentence in Plaintiff's Declaration stating in its entirety, "I don't feel like I can go back to GD Barri" (Doc. 36 at 5; Doc. 36-1 at 5). This portion of the record is non-responsive to paragraph 13 of Defendant's Statement of Facts. Statement of Fact paragraph 13 of Defendant's Statement of Facts (Doc. 31 at 3 ¶ 13) is, thus, undisputed. Discussion of paragraph 13 is illustration, and the Court need not detail in the factual summary below each time Plaintiff failed to properly state whether Defendant's asserted statement of fact is disputed or undisputed and/or failed to properly support Plaintiff's corresponding paragraphs to Defendant's statement of facts.

Problems with Plaintiff's Controverting Statement of Facts (Doc. 36) do not end with the type described above. In what appears to be attempts at obfuscation, Plaintiff disputes some of Defendant's statements of fact despite that the record, including in some instances Plaintiff's own sworn testimony, supports the "disputed" statement of fact. In

these instances, Plaintiff presents citations to the record that are not applicable to the disputed statement of facts.  As example, in paragraph six of Defendant's statement of facts, Defendant asserts that Plaintiff "was told her position was eliminated and was never told it was because she filed a sexual harassment complaint." (Doc. 31 at 2 ¶ 6).  Plaintiff's controverting statement of facts states that "Plaintiff disputes this statement of fact" (Doc. 36 at 3 ¶ 6).  Yet, in Plaintiff states in her Declaration that when Plaintiff was informed by Defendant that her employment would end, Plaintiff was "told by GD Barri that there was a reduction in force" (Doc. 31 at 2 ¶ 6; Doc. 36-1 at 4 ¶ 6).  Further, in her deposition, Plaintiff testified consistent with her Declaration statement and Defendant's statement of fact:

> Q.     What did Ms. Gilbert [of G.D. Barri] tell you about why your employment was going to be ending?
>
> A.     I'm not sure exactly.
>
> Q.     Well, just basically.
>
> A.     That it was my last - - basically, it was my last day and they were terminating me.
>
> Q.     Did they tell you that they were terminating you because the job ended, APS told them it ended, or did she give you a reason at all or just say, "You're terminated today"?
>
> A.     Well, I was pretty much in shock when she said I was - - I was being let go, so I don't remember everything that was said.
>
> Q.     That's fair.  But did she say that your job was being eliminated?
>
> A.     Eliminated.  Terminated.
>
> Q.     Okay.  Did she ever tell you that you were being terminated because you filed a sexual harassment complaint?
>
> A.     No.

(Doc. 31-1 at 14 (page 32:3-22)).  Further, Plaintiff testified at her deposition:

Q.     Has anybody at G.D. Barri told you that the reason you were laid off or reduced in force was because you filed a sexual harassment claim?

A.     No.

Q.     Did anyone at APS tell you because you filed a complaint and started an investigation that you were going to get laid off?

A.     No.

(*Id.* at 17 (page 45:10-25, page 46:1-3)).[1]  In support of Plaintiff's dispute of the facts she had admitted at her deposition and that she admits in her Declaration (Doc. 36-1 at 4 ¶ 6), Plaintiff asserts that she "was terminated within 30 days of the conclusion of Dale Ussery's sexual harassment investigation" and that the APS supervisor "never advised Defendant that Plaintiff's services were not needed" (Doc. 36 at 3 ¶ 6).  These statements do not support disputing paragraph six of Defendant's statement of facts.  Rather, Plaintiff has violated LRCiv 56.1(b), and Plaintiff will be afforded no benefit from this and similar LRCiv 56.1(b) violations.  Viewing evidence in the light most favorable to Plaintiff for summary judgment purposes does not require the Court to condone Plaintiff's failure to follow established court rules regarding summary judgment procedures.  Where Plaintiff has violated LRCiv 56.1(b) by disputing a statement of fact without proper support in the record, the Court will deem the Defendant's statement of fact undisputed provided there is a support in the record for Defendant's statement of fact.

### 2.     Plaintiff's Declaration

Despite that Plaintiff was deposed in this matter, Plaintiff supports several of her disputes with Defendant's Statement of Facts with her own Declaration prepared for submission with her Controverting Statement of Facts (Doc. 36-1).  A party cannot create a genuine issue of material fact by contradicting his own previous sworn statement without explaining the contradiction.  *See Cleveland v. Policy Management Systems Corp.*, 526

---

[1] Plaintiff also asserts as a supplemental statement of fact that on "December 1, 2017, Defendant told Plaintiff that she could no longer work on the job because of a reduction in force" (Doc. 36 at 8 ¶ 6).

U.S. 795, 806 (1999).   However, this rule does not apply in every case in which a declaration contradicts prior deposition testimony.   Rather, it is concerned with sham testimony that flatly contradicts earlier testimony in an attempt to create a factual dispute and avoid summary judgment.   *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).   When Plaintiff's disputes with Defendant's Statement of Facts fall into the prohibited category, the disputes are not properly considered in opposition to Defendant's motion.

"[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony."   *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).   Hearsay in Plaintiff's declaration that could not be submitted in admissible form at trial, assertions by Plaintiff that are unsupported by her personal knowledge, inadmissible opinion evidence from Plaintiff, and "sham testimony" in Plaintiff's Declaration will not be considered in opposition to Defendant's motion and cannot defeat summary judgment.

**B.      Summary of Material Undisputed Facts**

Defendant G.D. Barri is an employment agency providing workers for Arizona Public Service ("APS") in Arizona (Doc. 31 at 1 ¶ 2; Doc. 36 at 2 ¶ 2). According to Plaintiff's supplemental statement of facts, Defendant G.D. Barri has over 500 employees (Doc. 36 at 8 ¶ 4).   Dale Ussery ("Ussery") is the Vice President and Chief Operating Officer of G.D. Barri & Associates (Doc. 31 at 1 ¶ 1; Doc. 36 at 2 ¶ 1).   Plaintiff was employed by Defendant G.D. Barri at the APS Palo Verde Nuclear Power Station as a "Drafter I"[2] from May 30, 2017, to December 1, 2017 (Doc. 31 at 1 ¶ 3; Doc. 36 at 2 ¶ 3). Plaintiff had also been employed by Defendant from January 13, 2015, through December 18, 2015 (Doc. 36 at 2 ¶ 3; *see also* Doc. 31-1 at 18 indicating that Plaintiff was a "rehire" and that Plaintiff was "last badged" on December 18, 2015).

---

[2] Also referred to as "Drafter 1" in deposition testimony.

For Plaintiff's 2017 employment, the written employment agreement specifically stated that Defendant G.D. Barri:

> provides the services of its employees to Clients on a contract or project basis. This agreement for employment is governed by the underlying contract or agreement with the client. Therefore, all terms and conditions of employment are subject to modification as directed by these agreements. Any reference to length of assignment is an estimate only and the length of assignment will be based upon the project/supplementary work force requirements of the client and/or [G.D. Barri].

(Doc. 31-1 at 19). The employment agreement went on the specify that the "contract is considered an At Will contract for termination purposes" (*Id.* at 20). Appendix B to the written employment agreement specified that Plaintiff had been assigned "as a temporary contract worker" (*Id.* at 21). The estimated employment end date on the hire form for Plaintiff was December 15, 2017 (*Id.* at 18; Doc. 31-1 at 8).

Plaintiff asserts in her Controverting Statement of Facts that her employment position with G.D. Barri "was to be long term" (Doc. 36 at 2 ¶ 4) and uses her own Declaration as the only support for such assertion (Doc. 36-1 at 3-4). Plaintiff's assertion belies the documentary evidence including the written employment agreement that Plaintiff signed.[3] Further, Plaintiff testified at her deposition that it was "fair to say" that "when APS tells G.D. Barri that the project has ended, then it is [Plaintiff's] understanding that G.D. Barri then has to terminate the employment or find another position for [Plaintiff]" (Doc. 31-1 at 12, page 23:3-8). The Court finds that Plaintiff's assertion that her employment position "was to be long term" is a sham declaration statement prohibited under Ninth Circuit law. Further, Plaintiff's declaration assertion that her position was to be long term is supported by statements that lack foundation, are speculative, and are based on inadmissible hearsay. Thus, the Court will accept as undisputed that Plaintiff's employment position with Defendant G.D. Barri began with an estimated end date of

---

[3] Plaintiff's general assertion is also inconsistent with the term of her prior employment with Defendant, when she worked from January 13, 2015 to December 18, 2015 (Doc. 36-1 at 1 ¶ 2).

December 15, 2017.   Further, Plaintiff understood regarding her employment with Defendant G.D. Barri, that when APS lets G.D. Barri know there is no longer work available for her, G.D. Barri would terminate her employment (Doc. 31 at 2 ¶ 5; Doc. 31-1 at 12).[4]

Defendant explained the structure of the relationship between G.D. Barri and APS in its statement of facts:

> When APS needs employees, it contacts G.D. Barri.  If a client of G.D. Barri, such as APS, no longer requires G.D. Barri employees, G.D. Barri simply steps away.  (Exhibit D, p. 12:15-25; 13:1-25; 14:1-25; 15:1-19; 16:8-20; p. 27:19-24; Exhibit A, p. 55:17-21 ("If the client says they don't have anything else for us to do, we go away.")).

(Doc. 31 at 3 ¶ 17).[5]

In October 2017, Plaintiff reported to APS that she had been sexually harassed (Doc. 31 at 2 ¶ 7; Doc. 36 at 3 ¶ 7).  The parties dispute the adequacy of the investigation of the sexual harassment allegations, but there is no dispute that Dale Ussery, Defendant G.D. Barri's Vice President and Chief Operating Officer (Doc. 31 at 1 ¶ 1; Doc. 36 at 2 ¶ 1) and Defendant G.D. Barri employee Sandra[6] Gilbert conducted the investigation (Doc. 31 at 2 ¶ 8; Doc. 36 at 3 ¶ 8; Doc. 36-1 at 4 ¶¶ 7, 8).

Defendant asserts that Plaintiff's employment with Defendant G.D. Barri ended because Defendant G.D. Barri had no more work for her based on APS informing Defendant G.D. Barri that it had no more work for Plaintiff (Doc. 31 at 2 ¶ 9, 10).  Plaintiff disputes that her employment ended because APS, and therefore Defendant G.D. Barri, had no work for her (Doc. 36 at 3-4 ¶ 9, 10) based on Plaintiff's assertion that she knew

---

[4] In the depositions, counsel for both parties and the deponents generally use the terms "terminate" and "termination" in a neutral manner, to mean the end of employment (*see*, e.g., Doc. 37-2 at 2 (page 53:14-25)).

[5] Plaintiff's dispute of Defendant's statement of fact paragraph 17 violates LRCiv 56.1(b).  The statement of fact is supported by the record and will be accepted as true for purposes of the motion before the Court.  For the reasons discussed above in section II(A)(2), *supra*, Plaintiff's Declaration does not create an issue of fact.  *See* Doc. 31-1 at 12, page 23:3-8.

[6] Also referred to as Sandy or Sandi.

"this was not true" because she "had work to finish" and that she is "confident that John Sears (Sears) would have told" her if "APS did not have work for" her (*Id.*; Doc. 36-1 at 3 ¶ 10; *see also* Doc. 36-1 at 1-5).  Plaintiff asserts that at the time of her termination, "there was a backlog of work" and states she "had enough work to last through 2018" (Doc. 36-1 at 1 ¶ 4, 2 ¶ 7).  Plaintiff's assertions do not create a material issue of fact for the reasons discussed in section II(A)(2), *supra*.

Further, in his deposition, Mr. Ussery addressed the end of Plaintiff's employment in relation to available work at APS for Defendant G.D. Barri employees:

> Q.     Okay.  So let's move forward and talk about [Plaintiff's termination].  Okay?  Why was she terminated?
>
> A.     We did not - - well, "termination" is a general category, correct?
>
> Q.     And that's how I am using the word.  Yes.
>
> A.     We provided reduction in force, because we had no more work for her.
>
> Q.     Okay.  Is there a certain type of work that she specifically did that was no longer needed to be done?
>
> A.     The nature of that determination is a function of the client's desire to pay money to have someone support their work.  That can be - - that's not something we would be aware of or even asked about.  If the client says they don't have anything else for us to do, we go away.

(Doc. 31-1 at 6 (page 55:8-21)).  Mr. Ussery further testified that the "collective backlog or nonbacklog work that could be performed and the client determines if they want additional personnel to perform it or if they don't.  It's not uncommon to have a backlog of work at any location" (Doc. 31-1 at 6 (page 56:5-8)).  Mr. Ussery further explained that:

> Reduction in force us caused by lack of work.  Again, we are a temporary agency.  It happens every year in every circumstance that we have at some point in time, so when there is no – nothing related to performance or absenteeism, or you know, we are going to have to remove somebody from the property, terminate them, that type of thing, it's normal to us.

(Doc. 31-1 at 7 (page 57:13-19)); the same deposition testimony was also provided by Plaintiff to support her statement of facts (Doc. 38-2 at 9).   Additionally, Mr. Ussery explained that Plaintiff did not perform work that was exclusive to her; rather, she performed "pool-type" work with other drafters (Doc. 31-1 at 6 (page 55:22-25, page 56:1-15)).

Defendant relies on deposition testimony of Mr. Ussery as well as deposition testimony of Ms. Gilbert to support assertions of fact that Defendant did not receive a request from APS to extend Plaintiff's contract, that Defendant was informed that APS had no more work for Plaintiff, and that Plaintiff's employment would not have been released if APS had not stated that Plaintiff's services were no longer needed (Doc. 31 at 3 ¶ 11, 12).  For example, from Mr. Ussery's deposition:

> Q.     Who made the decision to terminate [Plaintiff]?
>
> A.     I made the decision to give a reduction in force, but about as to the decision of between whom, I didn't - - I didn't specifically get involved in why her over anyone else.
>
> Q.     And who made the decision that it would be [Plaintiff]?
>
> A.     APS informed us that they did not have work for [Plaintiff].
>
> Q.     Okay.  And how did APS inform you of that?
>
> A.     I asked – well, then this would be hearsay because I asked Sandi to find out, because we had not received authorization to extend [Plaintiff], but we had received authorization to extend others by that time, and when we get close to what we call the "furlough," which is the end of the year, two weeks approximately, all employees for the most part are furloughed.  We are in a tight timeline to address those circumstances, because we have to get the paperwork through.   If someone is going to be extended, there is authorizations involved and so forth and so on, a lot of paperwork, so we try to get that done in advance of that furlough.
>
> Q.     Who at APS informed you that there was no work for [Plaintiff]?

. . .

- 11 -

A.      No one informed me directly.  I spoke to Sandi, and I asked Sandi to contact John Sears and ask about why we, you know - - if we were getting an extension or not.

Q.      Who is John Sears?

A.      John Sears is the APS department leader for that group, the drafting group.

Q.      So, as far as you were concerned, it was Mr. Sears's decision?

A.      No.  As far as I am concerned, it was my decision to give her a reduction in force, because she was our employee, but we were notified by the client that they didn't have more work for her at that time.

(Doc. 31-1 at 7 (page 59: 15-25, page 60: 1-25)); *see also* Doc. 31-1 at 9 (page 104:10-15). Mr. Ussery further explained in his deposition that "Drafter is a bit of an unusual category" for G.D. Barri across its Arizona properties and clients (Doc. 31-1 at 9 (page 104:19-21)). When asked at his deposition whether Plaintiff left the employment of G.D. Barri in retaliation for filing a sexual harassment charge, Mr. Ussery testified, "Absolutely not" (Doc. 31 at 9 (page 102:19-21)).

Ms. Gilbert of G.D. Barri testified:

Q.      Can you tell us specifically what happened with respect to [Plaintiff]?

A.      It was furlough time and we had not received any information requesting an extension of her contract, so I reached out to Mr. Sears to find out if there was a further need for her services, and there was not.

Q.      Did Mr. - - so Mr. Sears was the one who told you we no longer need [Plaintiff's] services specifically?

A.      Yes.

Q.      And did he or APS put anything in writing with respect to no longer needing [Plaintiff's] services?

A.      No.

Q.     Did you document your conversation with Mr. Sears?

A.     Those are not conversations that we document in regards to furlough and contract extensions.

Q.     Did you ask why her services were no longer needed?

A.     I did not.  It's a business need whether they have work that they - - someone can continue to work for them.

Q.     And so did Mr. Sears say that they did not have work for [Plaintiff]? Is that correct?

A.     That her services were no longer required.

Q.     He didn't say why they were no longer required?

A.     I do not recall.

Q.     Did you assume that he meant there was no longer work for her when he said her services are no longer required?

A.     That was my assumption.

. . .

Q.     The - - at any place or any time, did you document that Jon Sears said [Plaintiff], her services were no longer required?

A.     Just when we release someone, we - - on the paperwork when we release them, for an exit it says services no longer required or reduction in force.

(Doc. 31-1 at 29 (page 54:24-25, page 55:1-15, page 56:1-8, page 56: 17-22)).  When asked whether she "would have released [Plaintiff] if APS had not told [Ms. Gilbert that Plaintiff's] services were no longer needed", Ms. Gilbert testified, "No, I would not" (Doc. 31-1 at 30 (page 86:11-14)).

Mr. Sears[7] had no recollection of ever communicating with Defendant G.D. Barri

---

[7] Jon Sears was the supervisor for design engineering, configuration management at APS and supervised drafters (Doc. 31 at 3 ¶16; Doc. 36 at 5 ¶ 16).

- 13 -

that G.D. Barri should terminate Plaintiff (Doc. 31 at 3 ¶ 18; *see also* Doc. 38-1 at 4 (page 19:12-15)).[8]  Further, Mr. Sears was not aware of a "layoff of employees" who had been "acquired through G.D. Barri" (Doc. 38-1 at 2 (page 17:4-11)).  Mr. Sears also testified that APS does not inform employees of G.D. Barri whether or not their contracts are going to be renewed:  "That's between them [the employees] and G.D. Barri" (Doc. 38-1 at 3 (page 18:2-6)).  At his deposition, Mr. Sears further explained that the normal process for a person to be offered a new contract by G.D. Barri for work at APS involved someone from APS contacting G.D. Barri about APS needing the worker's services for the following year once APS had an approved budget for the following year (Doc. 31-1 at 36 (page 29:3-24)).  Mr. Sears could not recall having such a conversation with G.D. Barri about Plaintiff (Doc. 31 at 3 ¶ 19; *see also* Doc. 31-1 at 36 (page 29:3-24)).[9]

Plaintiff provides deposition testimony of Mr. Ussery that Defendant's employee Marian Gaines, who like Plaintiff was also a Drafter 1, was granted a contract extension on November 29, 2017 (Doc. 36 at 3 ¶ 9; Doc. 38-2 at 12-14 (page 90:24-25, 91:1-4)).  Plaintiff also provides deposition testimony that at least one drafters of a different level was also granted a contract extension on December 1, 2017 (Doc. 38-2 at 14 (page 91:5-9)).  Importantly, Mr. Sears' testimony about APS needs supports G.D. Barri's position that Plaintiff's employment with G.D. Barri ended because APS did not need her services as a Drafter 1:

> Q.     So, in December, there is a furlough, correct?[10]
>
> A.     Correct.

---

[8] Plaintiff's dispute of this is another example of Plaintiff violating LRCiv 56.1(b) (*see* Doc. 36 at 6 ¶ 18).  The statement of fact is supported by the record and will be accepted as true for purposes of the motion before the Court.  For the reasons discussed above in section II(A)(2), *supra,* Plaintiff's Declaration does not create an issue of fact.

[9] Plaintiff's dispute of this is yet another example of Plaintiff violating LRCiv 56.1(b) (*see* Doc. 36 at 6 ¶ 19).  The statement of fact is supported by the record and will be accepted as true for purposes of the motion before the Court.  For the reasons discussed above in section II(A)(2), *supra*, Plaintiff's Declaration does not create an issue of fact.

[10] Mr. Sears later testified that there is a furlough each year for two weeks around Christmas and New Years (Doc. 31-1 at 36 (32:3-10)).

Q.     We know that [Plaintiff] left in the first part of December of 2017, so because of the furlough, you would not have requested a replacement in December 2017, correct?

A.     That's correct.

Q.     Did you in sometime in January or afterwards request a replacement, because there was work to do in the drafting department at G.D. Barri and you found another employee?

[Objection as to form and foundation by Plaintiff's counsel, and Defendant's counsel instructs to answer]

A.     Okay.  Not in January.  I believe it was later that year, the following year that we determined we needed another one and put in a requisition for a drafter, but it was not in January.

Q.     All right.  Later that year you asked for a Drafter 2, a more experienced person; isn't that correct?

A.     I don't recall exactly, but that would have made sense.  Yes.

Q.     Why would you want a person with more experience generally speaking?

A.     Generally, because they take less time to train.  They can come up to speed and start doing productivity a lot quicker.

Q.     So it would be fair to say that you didn't have any Drafter 1 work available in the early part of 2018 so that you didn't need to request a replacement at that time?

A.     To the best of my recollection, that would be correct, but I don't recall exactly.

(Doc. 31-1 at 36 (page 30:11-25, page 31:1-16)).[11]

When Plaintiff was informed by Defendant on December 1, 2017 that her employment would end, in Plaintiff's words:  Plaintiff was "told by GD Barri that there

---

[11] Plaintiff's dispute of statement of fact is rejected for violation of LRCiv 56.1(b) (*see* Doc. 36 at 6 ¶20).  The statement of fact is supported by the record and will be accepted as true for purposes of the motion before the Court.  Further, for the reasons discussed above in section II(A)(2), *supra*, Plaintiff's Declaration does not create an issue of fact.

was a reduction in force" (Doc. 31 at 2 ¶ 6; Doc. 36-1 at 4 ¶ 6; Doc. 31-1 at 17 (page 46:7-25, page 47:1-6)).  Plaintiff was not told that she was being terminated because she filed a sexual harassment complaint (Doc. 31 at 2 ¶ 6; Doc. 31-1 at 14 (page 32:3-22)).  Further, on Plaintiff's termination slip, the reduction in force box was checked as the reason for the December 1, 2017, termination (Doc. 31-1 at 24).

The timing of Plaintiff being notified that her employment was ending and of the other employees receiving extensions of their contracts is consistent with the timing Plaintiff believed employees would be notified whether or not their employment was ending, which Plaintiff testified at her deposition was at the end of November 2017 (Doc. 31-1 at 17 (page 46:7-14)).

Plaintiff was and is eligible for rehire with Defendant (Doc. 31 at 3 ¶ 13).  *See* Section II(A)(1), *supra*.

In her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff asserted discrimination based on retaliation, not based on sex (Doc. 31 at 4 ¶ 21).[12]

### C.    Summary of Applicable Law for Plaintiff's Claim of Retaliation

To succeed on a retaliation claim under Title VII, a plaintiff must prove "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  "[R]etaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359-60 (2013) ("This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").  In *Nassar*, the United States Supreme Court clearly explained the difference in the causation standard for employees alleging status-based discrimination and employees alleging retaliation:

> An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the

---

[12] Again, Plaintiff violates LRCiv 56.1(b) (Doc. 36 at 7 ¶ 21).

injury would not have occurred but for the act.  So-called but-for causation is not the test.  It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.

. . . .

[However,] Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m).  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

*Nassar*, 570 U.S. at 343, 360 (emphasis added).

To establish a *prima facie* claim of retaliation, "a plaintiff [is required to] show:  (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two."  *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (internal quotation marks and citation omitted).  The evidentiary burden at this juncture "is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  At the *prima facie* stage, causation may be inferred from the timing of the protected activity and the adverse employment action.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).  "But timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression."  *Villiarimo*, 281 F.3d at 1065 (internal quotation marks and citations omitted).

If the plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the defendant 'to articulate some legitimate, [nonretaliatory] reason' for the adverse action."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The defendant need not prove the absence of retaliatory intent or motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the plaintiff.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  If the defendant does so, "the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory

reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Chuang v. University of California Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Burdine*, 450 U.S. at 256).

The goal of the pretext inquiry is not to determine whether defendant made the best employment decisions or even well-considered ones.  *See Green v. Maricopa County Cmty. Coll. Sch. Dist.*, 265 F.Supp.2d 1110, 1128 (D. Ariz. 2003).  Rather, the goal is to determine the extent to which defendant's explanation of its actions is a guise for unlawful retaliation.  *See Ekweani v. Ameriprise Fin., Inc.*, 2010 WL 481647, at *8 (D. Ariz. Feb. 8, 2010).  In this final analysis, the plaintiff "must do more than establish a prima facie [sic] case and deny the credibility of the [defendant's] witnesses."  *Schuler v. Chronicle Broadcasting Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986).  Plaintiff must produce evidence from which a reasonable jury might conclude that Defendant's proffered reason is pretextual.  *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 693 (9th Cir. 2017).  Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial.  *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).  Further, "[w]hile the Ninth Circuit has found proximity in time to be sufficient, in some cases, to establish the causation prong of the prima facie case, timing alone is generally not enough to establish pretext."  *Williams v. Fed. Express Corp.*, 211 F.Supp.2d 1257, 1266 (D. Ore. 2002); *see also Behan v. Lolo's Inc.*, 2019 WL 1382462, at *6 (D. Ariz. Mar. 27, 2019) (holding that timing alone "is not enough to create a triable issue of pretext"), appeal dismissed, 19-15874, 2019 WL 3384891 (9th Cir. June 12, 2019).

### D.    Application of Law to Material Undisputed Facts

Defendant's summary judgment motion does not challenge Plaintiff's ability to make a *prima facie* case of retaliation.[13]  Rather, Defendant moves for summary judgment

---

[13] Defendant did not move for summary judgment on Plaintiff's burden to establish a *prima facie* case of discrimination by showing (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two.  Nevertheless, if this case were to proceed to a jury trial, Plaintiff would need to present at trial sufficient evidence to establish a *prima facie* case and Defendant could argue that Plaintiff had not met such burden.  Indeed, given that Plaintiff's employment with G.D. Barri began with an expected end in December 2017, it is not clear that Plaintiff can make a *prima facie* case of an adverse employment action or regarding causation based on her October 2017 sexual

on the basis that Plaintiff cannot meet her burden that the proffered non-discriminatory reason for the ending of Plaintiff's employment with G.D. Barri is pretextual.  As discussed below, on the record before the Court, the Court will grant summary judgment in favor of Defendant regarding Plaintiff's retaliation claim because the Court finds that Defendant has articulated a legitimate, nonretaliatory reason for ending of Plaintiff's employment, that Defendant has  produced evidence sufficient to dispel the inference of retaliation raised by Plaintiff, and Plaintiff has not presented "specific and substantial" evidence to show pretext, *Godwin*, 150 F.3d at 1222.

G.D. Barri is an employment agency providing workers in Arizona for APS.  The needs of APS determine whether, how many, and the type of positions G.D. Barri is able to fill.  By the terms of the contract between Plaintiff and Defendant, the time period for employment was an "estimate only and the length of assignment will be based upon the project/supplementary work force requirements of the client and/or" Defendant.  Defendant G.D. Barri has presented a legitimate, nonretaliatory reason for ending of Plaintiff's employment in December 2017.  The reason presented by Defendant and supported by admissible evidence is that Defendant no longer had work for Plaintiff to perform.[14]  This is the reason given to Plaintiff by Defendant verbally and is consistent with the employment records kept by Defendant.  Plaintiff is simply wrong when asserting that "Defendant does not provide a reason why it terminated Plaintiff on December 1st" (Doc. 39 at 4).

While the APS representative, Mr. Sears, does not recall having any specific conversation with Defendant's representatives about ending Plaintiff's employment, Mr. Sears also testified that when a worker is needed for a contract covering any of the following year, APS communicates to Defendant APS's desire to have the position filled for the following year.  Mr. Sears could recall no specific conversation of that type about Plaintiff either.  Rather, Mr. Sears testified that by his recollection, there was a reduced need for drafters continuing through early 2018, and when a drafter was later added, the

harassment complaint if this case were to proceed to trial.

[14] The Court agrees with Defendant's analysis regarding Plaintiff's hearsay argument.  *See* Doc. 40, lines 14-24.

1    drafter added was a Drafter 2, a higher experience level than Plaintiff had fulfilled during

2    her employment with Defendant.   Further, Mr. Sears was clear that he would not

3    communicate need or lack of need of a G.D. Barri employee to the employee, but relied on

4    G.D. Barri to do that.   Plaintiff's statement in her declaration that she believes Mr. Sears

5    would have told her if her work was not needed is not admissible evidence to create an

6    issue of fact.

7            As opposed to Mr. Sear's inability to recollect communicating with Defendant's

8    representatives about not needing Plaintiff's services for the 2018 contract year, G.D.

9    Barri's Ms. Gilbert recalled communication from Mr. Sears that Plaintiff was no longer

10   needed for the 2018 contract year.   Ms. Gilbert as well as Mr. Ussery of G.D. Barri both

11   testified that had there been work for Plaintiff at APS in 2018, G.D. Barri would not have

12   ended Plaintiff's employment.   Further, Plaintiff was and is eligible for rehire at G.D. Barri.

13   The evidence is undisputed that APS did not request Plaintiff's services for the following

14   contract year and that APS only needed one of the two Drafter 1's in Plaintiff's group the

15   following contract year.   For these reasons, Plaintiff is simply wrong that this case requires

16   the answer to the question of whether "APS direct[ed] Defendant to release Plaintiff" (Doc.

17   39 at 6).   Further, questions raised by Plaintiff in her summary judgment response does not

18   satisfy the high burden on Plaintiff to come forward with substantial pretext evidence.

19           Plaintiff's opposition to Defendant's motion for summary judgment relies heavily

20   on the timing of the end of her employment in December 2017 in relation to her October

21   2017 sexual harassment complaint.   Even if timing of Plaintiff's complaint of sexual

22   harassment in relation to the end of her employment establishes *prima facie* causation, this

23   timing is not enough to create a triable issue of pretext as a legal matter and given the

24   particular facts of this case.   Importantly, Plaintiff's at will employment as a Drafter 1 with

25   Defendant G.D. Barri and a duty station at APS began in early 2017 with a projected end

26   date in December 2017, the same month that Plaintiff's employment actually ended.   The

27   projected end date had been December 15, 2017, subject to change, and Plaintiff's actual

28   employment end date was December 1, 2017.   This two week difference is not only

nominal and approximates the originally projected end date, but the December 1, 2017, notification to Plaintiff that her employment was ending was in the time frame, if not a little later, than Plaintiff had been expecting to be notified whether or not she would be offered a contract for employment for the next year.   In addition, the notification that Plaintiff's temporary employment was ending came in the same time frame that other employees were notified about employment for the following year.   Further, Plaintiff's previous employment with G.D. Barri in 2015 similarly ended in December 2015.   In short, the timing matters here are not substantial evidence in Plaintiff's favor to rebut the legitimate, nonretaliatory reason for termination presented by Defendant.

Plaintiff's other evidence of pretext is similarly insufficient, alone and coupled with the undisputed facts as to the timing of the pertinent events.   In her summary judgment response, Plaintiff asks, "Was there really a reduction in force?" (Doc. 39 at 4), arguing that because the employees of G.D. Barri who conducted the sexual harassment investigation were the same to testify that Plaintiff's services were no longer needed, the employees of G.D. Barri should not be believed.   The overlap of employees is simply not substantial evidence of pretext, particularly when APS did not have needs from Defendant G.D. Barri for another Drafter 1 to replace Plaintiff.

Plaintiff also asks, "Why was Plaintiff selected rather than her co-workers?" (*Id.* at 6).   Questions are not adequate to proceed to a jury on whether Defendant's legitimate, nonretaliatory reason for ending Plaintiff's employment was pretextual.   At this stage of the case, Plaintiff needs to present specific, substantial evidence that the other Drafter 1 was chosen over Plaintiff because of Plaintiff's sexual harassment complaint.   Plaintiff's own personal opinion that her employment ended and her coworker Drafter 1 was offered a contract for the following year because Plaintiff filed a sexual harassment complaint in October 2017 is not enough to overcome summary judgment.   Plaintiff's attestation that she believes that she had work to complete at APS at the time that her employment ended also does not show pretext.   The record is clear that G.D. Barri would only employ workers to be stationed at APS when APS was willing to pay for such workers.   Plaintiff provides

no evidence that Defendant G.D. Barri could require APS to keep on a G.D. Barri employee if APS does not want or require the employee's services. Further, Mr. Ussery testified that backlog was common at APS, Plaintiff's work at APS was described by Mr. Ussery as pool type work, and the other drafters could perform the remaining tasks described by Plaintiff. In addition, when APS later needed another drafter, the need conveyed was for a drafter with a greater level of experience than Plaintiff had.

In sum, Plaintiff has failed to present specific and substantial evidence of pretext to require a jury trial in this matter. A reasonable jury could not return a verdict for Plaintiff because Plaintiff cannot make the requisite showing of pretext. Thus, summary judgment for Defendant is appropriate on Plaintiff's retaliation claim.

### E.    Plaintiff's Declaratory Judgment Claim

In Defendant's motion for summary judgment, Defendant argues that Plaintiff's claim for declaratory relief merely duplicates Plaintiff's Title VII claim and should be dismissed:

> A request for declaratory relief pursuant to 28 U.S.C. § 2201 is inappropriate in this case because Plaintiff's request depends entirely on her claim under Title VII. *Mohammad Akhavein v. Argent Mortg. Co.*, No. 5:09-cv-00634 RMW, 2009 U.S. Dist. LEXIS 61796, at *14 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action . . . The relief Plaintiffs seek[] is entirely commensurate with the relief sought through their other causes of action. Thus, Plaintiffs' declaratory relief claim is duplicative and unnecessary.") (internal quotations omitted). Indeed, the issues presented with respect to the request for declaratory relief are the exact same as the Title VII claim. Thus, the request for declaratory relief pursuant to 28 U.S.C. § 2201 is unnecessary and should be dismissed. Regardless, given that Plaintiff's claim for retaliation under Title VII fails, any claim for declaratory action fails as well.

(Doc. 30 at 5-6). Plaintiff does not argue otherwise in her response to the motion for summary judgment (Doc. 39). Rather, Plaintiff summarizes this matter, stating that "Plaintiff sued Defendant for retaliation in violation of Title VII" (*Id.* at 2). The Court agrees with Defendant's analysis regarding Plaintiff's claim for declaratory relief, and the claim will be dismissed.

III.     **CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** granting Defendant's motion for summary judgment (Doc. 30) on the entirety of the Complaint.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment for Defendant and to close this case.

Dated this 22nd day of March, 2021.

Honorable Deborah M. Fine
United States Magistrate Judge